**SO ORDERED.**

**SIGNED this 14 day of February, 2014.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILMINGTON DIVISION

IN RE:

HENRY L. ANDERSON, JR,           CHAPTER 7
                                                      CASE NO. 10-00809-8-RDD

       DEBTOR

## ORDER

Pending before the Court is the Motion in Aid of Distribution filed by the Chapter 7 trustee on November 15, 2013 (the "Trustee Motion"), the Objection to Trustee's Motion in Aid of Distribution filed by Stubbs & Perdue, P.A. on December 9, 2013 (the "Objection"), and the Creditor United States of America's Brief in Support of Trustee's Motion in Aid of Distribution and in Response to Stubbs & Perdue, P.A.'s Objection to that Motion filed by the Internal Revenue Service on January 9, 2014 (the "IRS Response"). The Court conducted a hearing on January 13, 2014, in Greenville, North Carolina, to consider this matter. At the conclusion of the hearing, the Court took this matter under advisement.

## JURISDICTION

This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. §157(a)(2)(A) and (O).

## FACTUAL HISTORY

Henry L. Anderson, Jr. (the "Debtor") filed a petition for relief under Chapter 11 of the Bankruptcy Code on February 3, 2010. The Debtor's case was converted to one under Chapter 7 on November 17, 2011. James B. Angell (the "Trustee") was appointed Chapter 7 Trustee for the Debtor's bankruptcy case by order of the Court dated November 17, 2011. On July 19, 2011, the Internal Revenue Service (the "IRS") filed a Proof of Claim No. 9-6 in the amount of $997,551.80, which includes a secured claim for $629,305.93 in taxes, $121,891.95 in interest, and $235,885.00 in penalties (total amount of secured claim is $987.082.88). In accordance with 26 U.S.C. § 6323(f), the IRS included evidence of its proper filing of notices of federal tax liens with the Proof of Claim 9-6.

The Court entered five (5) Orders during the Chapter 11 case approving compensation to Stubbs & Perdue, P.A. ("S&P") as counsel for the Debtor. The compensation approved by the Court was as follows:[1]

---

[1] Of the "Total Outstanding" amount of compensation approved by the Court, $185,430.21, S&P sought $105,783.08, which is the amount of the compensation *approved* by the Court before the Bankruptcy Technical Corrections Act was enacted on December 22, 2010. At the hearing, S&P indicated that it would modify its request to the amount of fees that were *incurred* up to December 22, 2010, which according to the Supplement to Filing filed by S&P on January 17, 2014, is $153,471.86.

| Date of Order | Amount of Compensation Approved | Time Period | Status of Application |
|---|---|---|---|
| May 3, 2010 | $15,362.85 | February 3, 2010 to April 6, 2010 | Paid |
| August 4, 2010 | $75,222.56 | April 6, 2010 to July 7, 2010 | $62,607.56 Outstanding |
| October 25, 2010 | $43,175.52 | July 7, 2010 to September 28, 2010 | $43,175.52 Outstanding |
| May 25, 2011 | $66,350.97 | September 28, 2010 to March 14, 2011 | $66,350.97 Outstanding |
| July 29, 2011 | $13,296.16 | March 14, 2011 to June 27, 2011 | $13,296.16 Outstanding |
| **Total Outstanding:** | | | **$185,430.21** |

In the Trustee Motion, the Trustee estimates that total funds receivable in this case will be approximately $702,630.25 (the "Total Receipts"). The Total Receipts include settlement proceeds totaling $595,000.00 (the "Settlement Proceeds") that the Trustee received in settlement of certain claims made by the bankruptcy estate in an associated adversary proceeding. *Anderson v. A.L. Butler Daniel et al*, AP No. 10-00248-8-RDD. The Trustee takes the position that § 724(b) precludes distribution of any portion of the Total Receipts to the Chapter 11 administrative expenses of S&P in the amount of $185,430.21, Philip W. Haigh III, CPA ("Haigh"), in the amount of $13,051.97, and Tony Fisher ("Fisher") in the amount of $13,931.25.[2] The Trustee seeks entry of an order by the Court which the Trustee may rely on in making a proper interim distribution from the estimated Total Receipts.

In objecting to the Trustee Motion, S&P contends that the plain meaning of § 724(b)(2) under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "BAPCPA") controls;

---

[2] No objections have been filed by Haigh or Fisher.

3

not the version as changed by the Bankruptcy Technical Corrections Act of 2010 (the "BTCA"). S&P then argues that the amount of its Chapter 11 expenses, $105,783.08, that were approved while the BAPCPA version of § 724(b)(2) was in effect, and before the BTCA was enacted on December 22, 2010, have priority over the IRS secured lien. In addition, S&P states that ". . . due to Congress' poor drafting, the plain meaning of [the BAPCPA version of] § 724(b)(2) dictates that chapter 11 administrative expenses are to be paid prior to tax liens." *William F. Davis Assocs., P.C. v. Caplan (In re J.R. Hale Contracting Co.)*, 465 B.R. 218 (Bankr.D.N.M.2011).[3]

In the IRS Response, the IRS contends that S&P is not entitled to subordinate, or stand in the shoes of the IRS tax liens, even under the BAPCPA version of § 724(b)(2). Moreover, the IRS argues that the BTCA version of § 724(b)(2) applies in this case, and therefore, S&P's objection is not persuasive. Both parties agree that the BTCA version of § 724(b)(2) is not retroactive.

## DISCUSSION

The issue in this case is whether the BAPCPA version of § 724(b)(2) or the BTCA version of § 724(b)(2) applies in this case.

The version of § 724(b)(2), as amended by BAPCPA on April 20, 2005, states:

> (b) Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title . . . and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed . . .
>
> (2) second, to any holder of a claim of a kind specified in section 507(a)(1) (except that such expenses, other than claims for wages,

---

[3] In *In re J.R. Hale Contracting Co.*, the BTCA was not the law when the case was confirmed or converted from Chapter 11 to one under Chapter 7 on February 6, 2009; whereas in the case at bar, the BTCA was passed preconfirmation and preconversion. Therefore, the version of § 724(b)(2) passed as part of BAPCPA in 2005 is not applicable here, as it was in *In re J.R. Hale Contracting Co.. See In re J.R. Hale Contracting Co.*, 465 B.R. 218 (Bankr.D.N.M.2011).

4

> salaries, or commissions that arise after the date of the filing of the petition, shall be limited to expenses incurred under chapter 7 of this title and shall not include expenses incurred under chapter 11 of this title), ***507(a)(2)***, 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien[] . . .***(emphasis added.)***

11 U.S.C. § 724(b)(2) (2005).[4]

The BTCA was signed into law on December 22, 2010. Following December 22, 2010, § 724(b)(2) reads as follows:

> (2) second, to any holder of a claim of a kind specified in section ***507(a)(1)(C) or 507(a)(2)*** (except that such expenses ***under each such section***, other than claims for wages, salaries, or commissions that arise after the date of the filing of the petition, shall be limited to expenses incurred under ***this chapter*** and shall not include expenses incurred under chapter 11 of this title), ***507(a)(1)(A), 507(a)(1)(B),*** 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien[] . . . ***(emphasis added.)***

11 U.S.C. § 724(b)(2) (2010).

The Supreme Court of the United States has held that "[a] court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is a statutory direction or legislative history to the contrary." *Bradley v. School Bd. of City of Richmond*, 416 U.S. 696, 711 (1974). The Fourth Circuit Court of Appeals and this Court concur. *See Lytle v. Commissioners Union County*, 541 F.2d 421 (4th Cir. 1976). This Court has held that technical amendments to statutes apply to cases that are pending as of the effective date. *In re TP, Inc.*, 455 B.R. 455, 457 (Bankr.E.D.N.C.2011); *See also In re Landmark Atlantic Hess Farm, LLC,* 448 B.R. 707 (Bankr.D.Md.2011) (construing *Landgraf v. USI Film Products,* 511 U.S. 244 (1994)

---

[4] S&P argues that its Chapter 11 fees should be allowed because § 507(a)(2) was not excluded in the BAPCPA version of § 724(b)(2). Section 507(a)(2) includes administrative expenses allowed under § 503(b).

(application of amended statute to pending cases presumed unless application would have "retroactive effect")).

The BTCA version of § 724(b)(2) applies in this case. First, the BTCA technical corrections language of § 724(b)(2) is the version effective on November 15, 2013, the date of the Trustee Motion. Second, there is no statutory direction or legislative history supporting a contrary application of the BTCA version of § 724(b)(2).[5] The BTCA contains neither an effective date nor any directive about its application. Nothing in the language of the statute nor in the legislative history suggests that the BTCA version should not be applied to any Chapter 11 case converted to Chapter 7 that was pending at the time of its enactment. Bankruptcy Technical Corrections Act of 2010, Pub. L. No. 111-327. Third, application of the BTCA version of § 724(b)(2) would not result in manifest injustice as §724(b)(2) had no application in this case until the case was converted to Chapter 7 on November 17, 2011, some eleven months after the passage of the BTCA. Because the BTCA made "technical amendments" to the BAPCPA version of § 724(b)(2) and the instant case was pending on the effective date of the BTCA (December 22, 2010), there is a presumption that the BTCA version of § 724(b)(2) applies in this case. *See In re TP, Inc.*, 455 B.R. at 457.

Because there is no "retroactive effect" in this case, the presumption, developed by the Supreme Court of the United States in *Landgraf*, against applying a new statute in cases in which there would be a "retroactive effect" does not apply. *See Landgraf v. USI Film Products*, 511 U.S. 244 (1994). A new statute has a retroactive effect when it impairs the rights a party possessed when he acted, increases a party's liability for past conduct, or imposes new duties with respect to transactions already completed. *Landgraf,* 511 U.S. at 244, 280. However, a statute does not have

---

[5] *See* Footnote 5 of this Order for legislative history.

a "retroactive effect" merely because it is applied in a case arising from conduct that occurred before the statute's enactment, or upsets expectations based in prior law. *Landgraf*, 511 U.S. at 269-270.

In this case, the BTCA version of § 724(b)(2) imposed no new duties on S&P. Neither S&P's approved nor incurred Chapter 11 fees and expenses (the "Chapter 11 Expenses") rise to the level of a completed transaction or a possessed right pursuant to *Landgraf*. There was never a time prior to BTCA's enactment that S&P had a fixed right to be paid the Chapter 11 Expenses that was not subject to re-examination and adjustment. *See Specker Motor Sales Co. v. Eisen*, 393 F.3d 659 (6th Cir. 2004) (explaining that "[i]nterim compensation is subject to re-examination and adjustment); *See also In re Callister*, 673 F.2d 205 (10th Cir. 1982) (quoting Collier on Bankruptcy P 331.03 (15th ed. 1981) "[i]nterim allowances are always subject to the court's re-examination and adjustment during the course of the case, and all expenses of administration must receive the court's final scrutiny and approval.") Therefore, the Court's approval of the Chapter 11 Expenses did not give S&P a possessed right to be paid that would warrant relief.

S&P's claimed right to subordinate tax liens under the BAPCPA version of § 724(b)(2) is even more contingent and tenuous than its right to be paid the Chapter 11 Expenses. Since the BTCA version of § 724(b)(2) has been the law since December 22, 2010, the BTCA version of § 724(b)(2) was the law in effect on the date of conversion of the instant case from Chapter 11 to one under Chapter 7 (November 17, 2011). *See* Pub. L. No. 111-327. This is significant because § 724(b)(2) did not apply to this case prior to conversion, when it was a case under Chapter 11. Section 724 is applicable only in Chapter 7 cases. 11 U.S.C. § 103(b); *See also In re Adak Fisheries, LLC*, 2010 WL 7785855, *1 (Bankr. D. Alaska Jan. 26, 2010) (explaining that "[a] Chapter 11 debtor lacks the power of a Chapter 7 trustee to subordinate tax liens as permitted under [§] 724(b)"). Therefore, the

7

§ 724(b)(2) provisions had no effect on the Chapter 11 case, nor on any distribution, as the Chapter 11 debtor does not have the benefit of exercising the subordination of a tax lien while the case is in Chapter 11. Therefore, applying the current law creates no "retroactive effect" with respect to the Chapter 11 Expenses or S&P's claimed right to subordinate tax liens under § 724(b)(2). Accordingly, the presumption against applying a new statute in cases in which there would be a "retroactive effect" does not apply. The BTCA version of § 724(b)(2) applies to the pending case.

S&P argues that the Court should apply the plain meaning of the BAPCPA version of § 724(b)(2) in the case at bar. (*See* Footnote 4). Even if this Court were to look to the plain meaning of § 724(b)(2) prior to the passage of the BTCA, the passage of the BTCA, its legislative history[6],

---

5   Mr. Speaker, 5 years ago, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 was enacted into law. It exceeded 500 pages in length and made significant changes in our Nation's bankruptcy law. Since its enactment, a number of technical drafting errors have been identified. These include spelling errors, erroneous statutory cross references, incorrect grammar and terminology references, and mistakes in punctuation. I am pleased that H.R. 6198, the Bankruptcy Technical Corrections Act of 2010, corrects these purely technical errors.

Cong. Rec. H7158 (daily ed. Sept. 28, 2010) (Statement of Rep. Scott).

The Bankruptcy Technical Corrections Act of 2010 contains a number of useful spelling, grammatical, and other purely technical amendments to the Bankruptcy Code. These amendments will facilitate the work of bankruptcy lawyers and judges. When any provision of law is unclear or its text inaccurate, judges and lawyers may become confused about how Congress intends for the law to operate. Sometimes legislative inaccuracies even open the door to judicial activism. It is particularly important that the Bankruptcy Code be error free, as the number of bankruptcy filings continues to rise. . .
The bill under consideration today adopts many amendments suggested by the Administrative Office of the United States Courts. The Administrative Office suggested these changes in consultation with bankruptcy practitioners and judges. As a result, I expect this bill to yield a more user-friendly Bankruptcy Code. It is important to highlight on the record that this bill does not, and is not intended to, enact any substantive change to the Bankruptcy Code.
The changes made to the Code by this bill are purely technical in nature. No Federal judge should interpret any provision of this bill to confer, modify, or delete any substantive bankruptcy right, nor should anyone infer a congressional intent to alter substantive rights from the bill's attention to one section of the Bankruptcy Code but not another.

*Id*. (Statement of Rep. Smith).

and the legislative history of Section 724(b)(2) passed in 2005[7], make it clear that Congress intended to exclude Chapter 11 professional expenses when a case is converted to Chapter 7.

The interpretation of §724(b)(2) of BAPCPA amendments has not been the only text of BAPCPA where the court has looked and found that the plain meaning of the text must be interpreted in accord with legislative history. "We hold that the text, context, and purpose of the statutory provision at issue preclude this result. A debtor who does not make loan or lease payments may not take the car-ownership deduction."(under BAPCPA, Congress intended that "debtors [will] repay creditors the maximum they can afford"). *Ransom v. FIA Card Services,* 131 S.Ct. 716, 725, (2011). Likewise, in the present case, the plain meaning of the BTCA language of §724(b)(2) and

---

[7]

**Sec. 701. Treatment of Certain Tax Liens.** Subsection (a) of section 701 of the Act makes several amendments to section 724 of the Bankruptcy Code to provide greater protection for holders of tax liens on real or personal property of the estate, particularly holders of *ad valorem* tax liens. Many school boards obtain liens on real property to ensure collection of unpaid *ad valorem* taxes. Under current law, local governments are sometimes unable to collect these taxes despite the presence of a statutory lien because they may be subordinated to certain claims and expenses as a result of section 724. Pursuant to section 701(a), subordination of *ad valorem* tax liens is still possible under section 724(b), but limited to the payment of: (1) claims for wages, salaries, and commissions entitled to priority under section 507(a)(4); and (2) claims for contributions to employee benefit plans entitled to priority under section 507(a)(5). Section 701(a) will also protect the holders of these tax liens as well as Federal tax liens from erosion of their claims' status by expenses incurred under Chapter 11 of the Bankruptcy Code. Before a tax statutory lien on real or personal property may be subordinated pursuant to section 724, the Chapter 7 trustee must exhaust all other unencumbered estate assets and, consistent with section 506, recover reasonably necessary costs and expenses of preserving or disposing of such property.

H.R. Rep. No. 109-31, pt. 1, at 100 (2005).

In other words:

This amendment not only excludes *ad valorem* taxes, it further limits allowable administrative expenses to Chapter 7 expenses, and specifically disallows Chapter 11 expenses from payment as a "carveout" from tax liens. This was intended to prevent a Chapter 11 debtor from accumulating massive postpetition obligations and then using 724 to avoid prepetition tax liens to pay those claims. Opinions that have subordinated *ad valorem* taxes to Chapter 11 administrative expenses in the distribution of sale proceeds of property encumbered by the tax lien are no longer controlling authority.

Samuel Crocker & Robert Waldschmidt, *Impact of the 2005 Bankruptcy Amendments on Chapter 7 Trustees,* 79 Am. Bankr. L.J. 333, at 349 (2005).

9

its legislative history clearly demonstrate that Congress intended that tax liens not be subordinated to Chapter 11 costs of administration.

For all the reasons set forth, the Trustee's Motion is **GRANTED.**  The Objection of S&P is **OVERRULED.**

**SO ORDERED.**

**END OF DOCUMENT**