IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

Appeal No. 7:14-CV-00079-F

| | |
|---|---|
| IN RE: )<br>)<br>HENRY L. ANDERSON, JR., )<br>)<br>Debtor, )<br>_____)<br>)<br>STUBBS & PERDUE, P.A., )<br>) <br>Appellant, )<br>)<br>v. )<br>)<br>JAMES B. ANGELL, Chapter 7 Trustee, )<br>and UNITED STATES OF AMERICA, )<br>)<br>Appellees. ) | **ORDER** |

This matter is before the Court on an appeal from the February 14, 2014 order of the United States Bankruptcy Court for the Eastern District of North Carolina. In that order, the Bankruptcy Court granted the Trustee's Motion in Aid of Distribution and overruled objections from the appellant. For the reasons discussed below, the Court AFFIRMS the decision of the Bankruptcy Court.

**I.    PROCEDURAL AND FACTUAL HISTORY**

Debtor Henry L. Anderson, Jr., filed his voluntary petition under Chapter 11 of the Bankruptcy Code on February 3, 2010. *See* Voluntary Petition [DE-2-3]. On July 19, 2011, the IRS filed a claim under 11 U.S.C. §§ 502 and 506(a) for $997,551.80. *See* Proof of Claim 9-6 of IRS [DE-5-6]. That claim included a secured claim for $629,305.93 in taxes and $121,891.95 in

interest, with the remainder in penalties. *See id.* On November 17, 2011, the Bankruptcy Court granted the debtor's motion to convert the case to one under Chapter 7. *See* Order Converting Case to Chapter 7 [DE-4-3].

Nearly two years later, on November 15, 2013, the Chapter 7 Trustee filed a Motion in Aid of Distribution asking the Bankruptcy Court to provide guidance in making an interim distribution of an estimated $702,630.25 in total receipts. *See* Motion in Aid of Distribution [DE-4-5]. The Trustee stated in his motion that, pursuant to 11 U.S.C. § 724(b)(2), "the allowed chapter 11 administrative expense claims of Stubbs & Perdue, P.A., [and others] are not payable from the Net Receipts." *Id.* at ¶¶ 24-26. On December 9, 2013, Appellant Stubbs & Perdue ("S&P") filed an objection to the Motion in Aid of Distribution. *See* Case No. 10-00809-8-RDD, Objection to Trustee's Motion in Aid of Distribution [DE-722]. The arguments in that objection generally track the same arguments made in the present appeal.

On February 14, 2014, the Bankruptcy Court granted the Trustee's motion and overruled S&P's objections. *See* Order of February 14, 2014 [DE-1-1]. In so ruling, the Bankruptcy Court held that applying Bankruptcy Technical Corrections Act of 2010 (the "BTCA") version of § 724(b)(2), which was in force at the time the case was converted to one under Chapter 7, did not have a retroactive effect on S&P's professional fees. *See id.* at 5-8. The Bankruptcy Court also held that, even if the Bankruptcy Court were to apply the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "BAPCPA") version of § 724(b)(2), which was the version in force when S&P's fees were initially allowed, the result would still be the same. *See id.* at 8-10. More specifically, the Bankruptcy Court found that the legislative history of § 724(b)(2) under BAPCPA showed that, despite the plain though awkward meaning of the statute, Congress did not intend to allow professional fees to take priority over tax liens. *See id.*

2

at 8-9. S&P appealed the Bankruptcy Court's order to this Court on April 10, 2014. *See* Notice of Appeal from Bankruptcy Court [DE-1].

## II. STANDARD OF REVIEW

District courts sit as appellate courts in bankruptcy under 28 U.S.C. § 158(a). Courts review conclusions of law *de novo* and findings of fact for clear error. *See In re Kielisch*, 258 F.3d 315, 319 (4th Cir. 2001).

## III. ANALYSIS

S&P makes two arguments in favor of reversing the Bankruptcy Court. First, S&P argues that applying the BTCA version of § 724(b)(2), which was enacted after the Bankruptcy Court had allowed S&P's professional fees, "would have an impermissibly retroactive effect on the rights of [S&P]." Brief of Appellant S&P [DE-21] at 9. Second, S&P contends that the Bankruptcy Court should have applied the BAPCPA version of 11 U.S.C. § 724(b)(2), which version "dictates that the Pre-BTCA Compensation be afforded priority over secured tax liens, including the Tax Liens at issue in this case." *Id.*

The government and the Trustee argue, *inter alia*, (1) that applying the BTCA version of § 724(b)(2) would not have a retroactive effect and (2) that the BTCA version should apply as it was the law in force at the time of the case's conversion to Chapter 7. The Court agrees.

### a. The BTCA version of § 724(b)(2) applies to this case.

"[A] court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 711 (1974) (citing *United States v. Schooner Peggy*, 5 U.S. 103, 110 (1801)). Moreover, "[t]echnical amendments to statutes apply to cases that are pending as of the effective date, as well as to cases filed thereafter." *In re TP, Inc.*, 455 B.R. 455, 457 (Bankr. E.D.N.C. 2011). However, the Supreme

3

Court has also established a strong presumption against applying statutes where they would have a retroactive effect. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 269-273 (1994) ("[W]e have declined to give retroactive effect to statutes burdening private rights unless Congress had made clear its intent.").

In determining whether a federal statute has a retroactive effect, "the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach." *Id.* at 280. If Congress has not expressly prescribed the statute's reach, "the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* Where a statute has such an effect, there is a "traditional presumption . . . that it does not govern absent clear congressional intent favoring such a result." *Id.* However, "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment . . . or upsets expectations based in prior law." *Id.* at 269 (internal citations omitted). Instead, courts look to whether the new statute "attaches new legal consequences to events completed before its enactment." *Id.* at 270.

The BTCA version of § 724(b)(2) applies in the present case. It was in effect both when the case was converted from Chapter 11 to Chapter 7 and when the Chapter 7 Trustee made his Motion in Aid of Distribution. *See Bradley*, 416 U.S. at 711. Application of the BTCA version of § 724(b)(2) would not result in manifest injustice because, as the Bankruptcy Court correctly held, § 724(b)(2) did not even apply until the case was converted to one under Chapter 7, some eleven months after Congress had already passed the BTCA. *See* Order of February 14, 2014 [DE-1-1] at 6; *see also Bradley*, 416 U.S. at 711. Indeed, because this case was "pending as of the effective date" of the BTCA's "[t]echnical amendments" to § 724(b)(2), there is a

presumption that the BTCA version of § 724(b)(2) applies. *See In re TP, Inc.*, 455 B.R. at 457. Furthermore, there is no statutory direction or legislative history that indicating that the BTCA version of § 724(b)(2) should not be applied. *See Bradley*, 416 U.S. at 711.

### b. Applying the BTCA version of § 724(b)(2) does not have a retroactive effect.

Because the BTCA does not contain an effective date nor does it "expressly prescribe[] [its] proper reach," the court must determine whether the BTCA version of § 724(b)(2) has a retroactive effect on any of S&P's rights. *Landgraf*, 511 U.S. at 280. The Court concludes that it does not because S&P never had a vested right in the Chapter 11 expenses.

While S&P did complete work in the bankruptcy case prior to the effective date of the BTCA, the Court agrees with the government that S&P had, at most, a "contingent *expectation*" in its Chapter 11 expenses in event the case was later converted to Chapter 7. *See* Appellee United States of America's Appeal Brief [DE-25] at 9 (emphasis added). If the case had not been converted, the Bankruptcy Court would still have had the opportunity to re-examine and adjust the Chapter 11 fees it had previously approved. *See, e.g., Specker Motor Sales Co. v. Eisen*, 393 F.3d 659, 663 (6th Cir. 2004) ("Interim compensation is subject to re-examination and adjustment."). Thus, S&P's right in the fees had not vested when the BTCA was passed. Instead, the BTCA was already in force (1) when the case was converted to Chapter 7 and (2) when the Trustee made his Motion in Aid of Distribution. As a result, the IRS tax lien was not subordinated to S&P's professional fees. Because the BTCA version of § 724(b)(2) applies to this case and because there was no retroactive effect, the Bankruptcy Court properly granted the Trustee's Motion over S&P's objections.[1]

---

[1] Because the Court finds that the BTCA version of § 724(b)(2) applies to and disposes of the matter, the Court does not look to whether the same result would be reached under the BAPCPA version of § 724(b)(2).

## IV. CONCLUSION

For the foregoing reasons, the February 14, 2014 order of the Bankruptcy Court in Adversary Proceeding No. 10-00809-8-RDD, granting the Trustee's Motion in Aid of Distribution, is hereby AFFIRMED.

SO ORDERED.

This, the 25th day of February, 2015.

                                                    */s/ James C. Fox*
JAMES C. FOX
Senior United States District Judge