**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-1316

In Re: HENRY LONDON ANDERSON, JR.,

        Debtor.

-------------------------

STUBBS & PERDUE, P.A.,

        Appellant,

     v.

JAMES B. ANGELL, Chapter 7 Trustee,

        Trustee – Appellee,

     and

UNITED STATES OF AMERICA,

        Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington. James C. Fox, Senior District Judge. (7:14-cv-00079-F; 10-00809-8-SWH)

Argued: December 9, 2015                    Decided: January 26, 2016

Before WILKINSON, KEENAN, and HARRIS, Circuit Judges.

Affirmed by published opinion. Judge Harris wrote the opinion, in which Judge Wilkinson and Judge Keenan joined.

**ARGUED:** Trawick Hamilton Stubbs, Jr., STUBBS & PERDUE, P.A., New Bern, North Carolina, for Appellant. Paul Andrew Allulis, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; James B. Angell, HOWARD, STALLINGS, FROM, HUTSON, ATKINS, ANGELL & DAVIS, P.A., Raleigh, North Carolina, for Appellees. **ON BRIEF:** Joseph Z. Frost, STUBBS & PERDUE, P.A., Raleigh, North Carolina, for Appellant. Caroline D. Ciraolo, Acting Assistant Attorney General, Thomas J. Clark, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Thomas G. Walker, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina; Nicholas C. Brown, HOWARD, STALLINGS, FROM, HUTSON, ATKINS, ANGELL & DAVIS, P.A., Raleigh, North Carolina, for Appellees.

———————

PAMELA HARRIS, Circuit Judge:

Stubbs & Perdue, P.A. ("Stubbs") represented Henry L. Anderson, Jr. (the "Debtor") in bankruptcy proceedings, and is owed approximately $200,000 in legal fees from that representation. But the Debtor also is subject to nearly $1 million in secured tax claims, and the estate has insufficient funds to pay both Stubbs's fees and the tax claim. In practical terms, this case is about which of those claims takes priority in a Chapter 7 liquidation under the Bankruptcy Code.

The answer is found in § 724(b)(2) of the Bankruptcy Code, 11 U.S.C. § 724(b)(2). And under the version of § 724(b)(2) in effect when the bankruptcy court rendered its decision, it is clear that the secured tax claim takes priority over Stubbs's claim to fees. Stubbs argues, however, that application of current law to its claim would have an impermissible retroactive effect, and that it can prevail under the prior version of § 724(b)(2) that should govern this case. Like the bankruptcy court and the district court, we disagree, and we therefore affirm the judgment of the district court.

**I.**

**A.**

On February 3, 2010, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, which

3

governs reorganizations of debtors' estates. Shortly thereafter, the bankruptcy court approved Stubbs to serve as the Debtor's counsel. In July of 2011, the IRS filed a proof of claim against the estate in the amount of $997,551.80, of which $987,082.88 was secured by the Debtor's property interests.

During the pendency of the Debtor's Chapter 11 case, the bankruptcy court entered five orders approving compensation to Stubbs for legal services, for a total of slightly more than $200,000. The allowance of Stubbs's fees, as the "actual" and "necessary" expenses of preserving the Debtor's estate, gave Stubbs an unsecured claim for "administrative expenses" against the estate. See 11 U.S.C. §§ 330(a), 503(b). The Bankruptcy Code establishes a hierarchy of unsecured creditors like Stubbs, and as an administrative expense claimant, Stubbs holds second-priority status under § 507(a)(2) of the Code. See 11 U.S.C. § 507(a)(2).

On November 17, 2011, after the Debtor failed to demonstrate that he could effectuate a final plan of reorganization under Chapter 11, the Debtor's bankruptcy case converted to one under Chapter 7, which governs liquidations. The bankruptcy court then appointed James B. Angell (the "Trustee") as the Chapter 7 Trustee.

The Trustee was able to accumulate $702,630.25 for distribution to the estate's creditors. He estimated that total

4

Chapter 7 administrative expenses would amount to $278,921.42, leaving the Debtor's estate with just $423,708.83 – far short of what would be required to satisfy the IRS's secured tax claim of nearly $1 million and Stubbs's unsecured Chapter 11 administrative expense claim of roughly $200,000.[1]  So unless Stubbs's unsecured claim took priority over the secured claim of the IRS, Stubbs would not collect its fees.  Whether Stubbs could "subordinate" the IRS's claim in this manner was governed by 11 U.S.C. § 724(b)(2), and that provision is the focus of this case.

### B.

The general rule in bankruptcy is that secured claims are satisfied from the collateral securing those claims prior to any distributions to unsecured claims.  See 11 U.S.C. §§ 506, 725; In re Midway Airlines, Inc., 383 F.3d 663, 669 (7th Cir. 2004).  Secured claims, in other words, take priority.  Under that general rule, the IRS's claim in this case would be paid first and nothing would be left for payment on Stubbs's unsecured claim for administrative expenses incurred during the Chapter 11 proceeding.

---

[1] Stubbs's total allowed compensation amounted to $213,408.06.  But because the Debtor paid $27,977.85 of Stubbs's fees, Stubbs is now owed $185,430.21.

5

But in Chapter 7 liquidations, there is a limited exception to this norm. Under § 724(b)(2) of the Bankruptcy Code, certain unsecured creditors may "step into the shoes" of secured tax creditors in Chapter 7 liquidation proceedings, so that when the collateral securing the tax claims is sold, the unsecured creditors are paid first. If Stubbs's claim for Chapter 11 administrative expenses was among the unsecured claims covered by § 724(b)(2), then — and only then — could it recover from the estate.

Because the history of § 724(b)(2) is directly relevant to this case, we cover it in some detail. Until 2005 (and before any of the events at issue here), § 724(b)(2) was relatively uncomplicated, providing all holders of administrative expense claims, like Stubbs, with the right to subordinate secured tax creditors in Chapter 7 liquidations. See 11 U.S.C. § 724(b)(2) (2000). But that statutory scheme was criticized on the ground that it created perverse incentives, encouraging Chapter 11 debtors and their representatives to incur administrative expenses even where there was no real hope for a successful reorganization, to the detriment of secured tax creditors when Chapter 7 liquidation ultimately proved necessary. See In re K.C. Mach. & Tool Co., 816 F.2d 238, 248 (6th Cir. 1987) (Merritt, J., dissenting).

In 2005, Congress responded with a fix. Under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (the "BAPCPA"), Congress sought to limit the class of administrative expenses covered by § 724(b)(2), excluding claims for the expenses incurred during prior Chapter 11 proceedings. In other words, in order "to provide greater protection for holders of tax liens . . . from erosion of their claims' status by expenses incurred under chapter 11 of the Bankruptcy Code," H.R. Rep. No. 109-31(I), at 100 (2005), unsecured Chapter 11 administrative expense claims would no longer take priority over secured tax claims in Chapter 7 liquidations.

Thanks to a drafting error, however, it is not clear that Congress accomplished what it set out to do. The Bankruptcy Code is complicated, and the original version of § 724(b)(2) covered claims for unsecured administrative expenses through cross reference to 11 U.S.C. § 507(a)(1), a provision that gave such claims first priority as among other unsecured claims. <u>See</u> 11 U.S.C. § 507(a)(1) (2000). So when Congress amended § 724(b)(2) to exclude Chapter 11 administrative expenses, it did so by clarifying that subordination rights would extend "to any holder of a claim of a kind specified in section 507(a)(1)" — that is, administrative expenses — "<u>(except that such expenses . . . shall be limited to expenses incurred under chapter 7 of</u>

7

this title and shall not include expenses incurred under chapter 11 of this title)." 11 U.S.C. § 724(b)(2) (2006) (emphasis added). And it would have worked — except that in a separate amendment, the BAPCPA simultaneously altered the § 507 priority scheme for unsecured claims, dropping administrative expense claims from first to second and moving them from § 507(a)(1) to § 507(a)(2). See § 212, Pub. L. No. 109-8. The end result was that the exclusion of Chapter 11 expenses inserted into § 724(b)(2), read literally, did not apply to the administrative expenses that were its target, but instead to the new set of claims now enumerated under § 507(a)(1).

That was the state of affairs when the Debtor filed his initial Chapter 11 petition in February of 2010. At the time, none of this was of particular importance, because § 724(b)(2) applies only in Chapter 7 liquidations and not in Chapter 11 reorganizations. See 11 U.S.C. § 103(b). And ten months later, while the Debtor's case remained in Chapter 11, Congress corrected its error with the Bankruptcy Technical Corrections Act of 2010, Pub. L. No. 111-327, 124 Stat. 3557 (the "BTCA"). The BTCA made "technical" changes to the Bankruptcy Code, see id., necessitated by a "number of technical drafting errors" in the BAPCPA. See 156 Cong. Rec. H7161 (daily ed. Sept. 28, 2010) (statement of Rep. Scott) ("This bill before us today is simply a technical cleanup of the [BAPCPA]."). In particular, the BTCA

8

coupled the parenthetical excluding Chapter 11 expenses with a cross-reference to § 507(a)(2), where unsecured claims to administrative expenses are now enumerated, clarifying that Chapter 11 administrative expense claimants do not hold subordination rights under § 724(b)(2). See § 2(a)(27), Pub. L. No. 111-327.

Congress enacted the corrected BTCA version of § 724(b)(2) in December 2010. It was not until eleven months later, in November 2011, that the Debtor's bankruptcy case converted from Chapter 11 to Chapter 7, implicating § 724(b)(2) for the first time. Now in a Chapter 7 proceeding, Stubbs could invoke § 724(b)(2)'s exception to the general rule that unsecured claims like its own take a back seat to secured claims like the IRS's — but only if its claim to Chapter 11 administrative expenses was covered by the governing version of § 724(b)(2).

### c.

For guidance on this question, the Chapter 7 Trustee filed a Motion in Aid of Distribution before the bankruptcy court. The Trustee, with the support of the United States, took the position that the version of § 724(b)(2) then in effect — the corrected BTCA version — controlled, and that under that provision, there is no question but that Stubbs's unsecured claim to Chapter 11 administrative expenses is excluded. And even under the prior BAPCPA version of § 724(b)(2), the Trustee

9

and the United States argued, it is clear enough that Stubbs is not entitled to subordinate the IRS's secured tax claim.

Stubbs filed an objection. It did not dispute that it had no subordination rights under the current BTCA version of § 724(b)(2). But it argued that regardless of Congress' intent, the plain language of the prior version of § 724(b)(2) did entitle it to subordinate the IRS's secured tax claim. And according to Stubbs, application of the new and corrected version of § 724(b)(2) would have an impermissible retroactive effect, cutting off its right to recover for Chapter 11 administrative expenses incurred before Congress fixed its drafting error.

The bankruptcy court agreed with the Trustee and dismissed Stubbs's objection. In re Anderson, No. 10-00809-8-RDD, 2014 WL 590481 (Bankr. E.D.N.C. Feb. 14, 2014). It held, first, that the BTCA version of § 724(b)(2) governs this case, under the normal rule that "a court is to apply the law in effect at the time it renders its decision." Id. at *2-3 (quoting Bradley v. Sch. Bd. of Richmond, 416 U.S. 696, 711 (1974)). The presumption against retroactivity described in Landgraf v. USI Film Products, 511 U.S. 244 (1994), the court reasoned, has no bearing here: The BTCA version of § 724(b)(2) already was in effect when the case converted to Chapter 7, so application of current law would have no retroactive effect on Stubbs's right

10

to subordinate tax liens in a Chapter 7 proceeding. 2014 WL 590481, at *3.

In the alternative, the bankruptcy court found that even under the BAPCPA version of § 724(b)(2), Stubbs would hold no right to subordinate the IRS's secured tax claim. Analyzing "the passage of the BTCA, its legislative history, and the legislative history of [the BAPCPA] Section 724(b)(2)," the court thought it "clear that Congress intended to exclude Chapter 11 professional expenses when a case is converted to Chapter 7." Id. at *4.

The district court affirmed the decision of the bankruptcy court. In re Anderson, No. 7:14-cv-00079-F, 2015 WL 892363 (E.D.N.C. Feb. 26, 2015). Like the bankruptcy court, the district court held that the law in effect at the time of decision — the BTCA version of § 724(b)(2) — governs the case. Because Stubbs had no vested right to subordinate under § 724(b)(2) "until the case was converted to one under Chapter 7, some eleven months after Congress had already passed the BTCA," the court reasoned, application of current law would have no retroactive effect within the meaning of Landgraf. Id. at *3. Having found that the BTCA version of § 724(b)(2) applies and precludes Stubbs's claim to subordination, the district court did not decide whether the same result would follow under the BAPCPA version of § 724(b)(2).

11

This timely appeal followed.

## II.

### A.

This court reviews the judgment of a district court sitting in review of a bankruptcy court de novo. Jacksonville Airport, Inc. v. Michkeldel, Inc., 434 F.3d 729, 731 (4th Cir. 2006). We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. Id. Whether § 724(b)(2) empowers Stubbs to subordinate the IRS's secured tax claim is a pure question of law.

### B.

The Supreme Court has identified two rules for interpreting statutes that, like § 724(b)(2), do not specify their temporal reach. See Landgraf, 511 U.S. at 264. The first is that, as a general rule, "a court is to apply the law in effect at the time it renders its decision." Id. (quoting Bradley, 416 U.S. at 711); see Velasquez-Gabriel v. Crocetti, 263 F.3d 102, 108 (4th Cir. 2001) ("[N]ormally a court is to apply the law in effect at the time it renders its decision." (citation and internal quotation marks omitted)). The second is effectively an exception to the first: Because retroactivity is disfavored, a court should not apply the law currently in effect if it would have a "retroactive effect" on conduct predating the law's

12

enactment, "absent clear congressional intent favoring such a result." Landgraf, 511 U.S. at 280. Combined, these principles dictate that a court apply the law in effect at the time it renders its decision, unless that law would operate retroactively without clear congressional authorization. See Gordon v. Pete's Auto Serv. of Denbigh, Inc., 637 F.3d 454, 458 (4th Cir. 2011) (describing Landgraf framework for analysis).

The bankruptcy and district courts concluded that this is the ordinary case, in which the law in effect at the time of decision — here, the BTCA version of § 724(b)(2) — applies. Stubbs, on the other hand, argues that this case is the exception, because application of the BTCA version of § 724(b)(2) to its claim for Chapter 11 administrative fees, incurred and approved prior to enactment of the BTCA, would have an impermissible retroactive effect.[2] We agree with the bankruptcy and district courts, and conclude that Stubbs's claim is governed and foreclosed by the BTCA version of § 724(b)(2).

A rule that courts should apply the law in effect when they render their decisions has the advantage of being clear and easy

---

[2] On appeal, Stubbs limits its retroactivity challenge to the $105,783.08 in Chapter 11 legal fees approved by the bankruptcy court prior to the BTCA's enactment date of December 22, 2010. Before the district court, Stubbs had argued that the BTCA version of § 724(b)(2) could not be applied to a total of $153,471.86 in unpaid fees, which included fees incurred before the BTCA was enacted but approved only after enactment.

to administer.  And that is especially important in the bankruptcy context.  Chapter 7 trustees have a fiduciary duty to make already-complex calculations in an expeditious manner, see In re Thompson, 965 F.2d 1136, 1145 (1st Cir. 1992), and we have recognized "a public policy interest in reducing the number of ancillary suits that can be brought . . . so as to advance the swift and efficient administration of the bankrupt's estate," In re Richman, 104 F.3d 654, 656–57 (4th Cir. 1997).  Requiring Chapter 7 trustees to distinguish between and apply different versions of the Bankruptcy Code, on the other hand, would complicate the process significantly, necessitating an additional level of discovery and analysis.  The result would be the potential for substantial delays in administration and increased exposure for bankruptcy trustees, who are subject to personal liability on claims for improper distribution.  Cf. Yadkin Valley Bank & Trust Co. v. McGee, 819 F.2d 74, 76 (4th Cir. 1987) (trustee subject to liability for negligently failing to reduce the assets of the estate to money as expeditiously as possible).

Stubbs argues, however, that it would be unjust to apply the BTCA version of § 724(b)(2) retroactively to disallow payment on its unsecured claim for Chapter 11 fees.  See Landgraf, 511 U.S. at 265 (presumption against retroactivity flows from "[e]lementary considerations of fairness").  Prior to

14

the BTCA, Stubbs contends, it was entitled to subordinate the IRS's secured claim under § 724(b)(2); denying it that right as to Chapter 11 administrative expenses approved before the BTCA's passage would have an impermissible "retroactive effect" under Landgraf. We disagree.

The problem with Stubbs's argument is its premise: that Stubbs held subordination rights under § 724(b)(2) before the BTCA was enacted in December 2010. Before the BTCA was enacted, § 724(b)(2) had no application to the Debtor's case at all. It afforded Stubbs no entitlement to subordinate the IRS's secured tax claim for the threshold reason that it simply did not apply in the Chapter 11 proceedings that began in this case in early 2010 and did not end until November 2011, eleven months after the BTCA's passage. The pre-BTCA version of § 724(b)(2) that Stubbs invokes, in other words, never controlled this case. By the time the case converted to Chapter 7 in November 2011, implicating § 724(b)(2) for the first time, the BAPCPA version of § 724(b)(2) had been superseded already by the corrected BTCA version. Like the bankruptcy and district courts, 2015 WL 892363, at *3; 2014 WL 590481, at *3, we think this sequence of events is dispositive of Stubbs's retroactivity argument.

We recognize, of course, that the BTCA version of § 724(b)(2) is being applied in this case to conduct — the incurrence and approval of legal fees in the Chapter 11

15

proceeding — that predates the provision's enactment. But as the Supreme Court has made clear, that by itself does not trigger Landgraf's presumption against retroactivity. Landgraf, 511 U.S. at 269 (statute does not operate retroactively "merely because it is applied in a case arising from conduct antedating the statute's enactment"); see Gordon, 637 F.3d at 459. Nor does application of a new statute to old conduct have a retroactive effect under Landgraf whenever it "upsets expectations based in prior law." 511 U.S. at 269. Before enactment of the BTCA, Stubbs may have expected that if the Debtor's Chapter 11 bankruptcy case at some point converted to Chapter 7, then it would acquire a right to subordinate the IRS's secured claim under § 724(b)(2).³ But such an inchoate expectation is not the kind of "vested right[] acquired under existing laws" that, if frustrated, gives rise to retroactivity concerns. Id. (citation omitted); see Jaghoori v. Holder, 772

---

³ Even that expectation, we note, would rest on the contested proposition that because of a drafting error, the BAPCPA version of § 724(b)(2) cannot be read to effectuate Congress' undisputed intent to exclude Chapter 11 expenses from subordination rights. We need not decide that question of statutory interpretation, given our holding that it is the BTCA version of § 724(b)(2), and not the BAPCPA version, that applies to this case. But given the confusion and flux surrounding the BAPCPA iteration of § 724(b)(2), any expectation Stubbs may have had that it could prevail under that provision should the Debtor's case convert to Chapter 7 was doubly contingent. Cf. Velasquez-Gabriel, 263 F.3d at 108–09 (likelihood of success under prior statute may inform retroactivity analysis).

F.3d 764, 771-72 (4th Cir. 2014) (finding impermissible retroactive effect where application of new statute "takes away or impairs vested rights acquired under existing laws" (citation omitted)).

For its argument to the contrary, Stubbs relies primarily on In re J.R. Hale Contracting Co., 465 B.R. 218 (Bankr. D.N.M. 2011), in which a bankruptcy court held impermissibly retroactive the application of the BTCA version of § 724(b)(2) to a claim for Chapter 11 administrative expenses incurred prior to the BTCA's enactment. Id. at 224-25. But on the single fact most critical to our holding — that the pre-BTCA version of § 724(b)(2) was at no time applicable to this case — J.R. Hale is not on point. In J.R. Hale, unlike this case, the underlying bankruptcy case converted from Chapter 11 to Chapter 7 almost two years before enactment of the BTCA, so that the BAPCPA version of § 724(b)(2) did in fact govern the case for a period of time before the BTCA correction. See id. at 219. That distinction is fundamental to our analysis.

As we have emphasized, the retroactivity inquiry is a particularized one, asking "not whether the statute may possibly have an impermissible retroactive effect in any case, but specifically whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense." Gordon, 637 F.3d at 459 (emphasis in original)

17

(citations and internal quotation marks omitted). We need not decide here whether application of the BTCA version of § 724(b)(2) in a case that converted to Chapter 7 while the prior version still controlled, as in J.R. Hale, would have an impermissible retroactive effect. It is enough for present purposes that J.R. Hale is no authority for finding retroactivity as "to the person objecting" in this case, in which the pre-BTCA version of § 724(b)(2) never had any controlling effect.

Accordingly, and like the district court, we hold that the bankruptcy court properly applied the BTCA version of § 724(b)(2) in effect when it rendered its decision. Under that provision, it is clear that Stubbs is not entitled to subordinate the IRS's secured tax claim in favor of its unsecured claim to Chapter 11 administrative expenses. Whether the same result would have obtained under the pre-BTCA version of § 724(b)(2), as urged by the Trustee and the United States, is a question we need not reach.

### III.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED